UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:07cv163-RJC

| | |
|---|---|
| SHELL TRADEMARK MANAGEMENT BV & MOTIVA ENTERPRISES, LLC, <br><br>Plaintiffs, <br><br>v. <br><br>RAY THOMAS PETROLEUM COMPANY, INC. & L. RAY THOMAS, <br><br>Defendants. | ORDER |

**THIS MATTER** is before the Court on the Plaintiff's motion for summary judgment as to damages (Doc. No. 94), Defendants' Response in Opposition (Doc. No. 102), and Plaintiff's Reply (Doc. No. 108). This Court incorporates by reference the Summary Judgment Order dated June 15, 2009. (Doc. No. 90). The Court grants in part and denies in part the Plaintiff's motion for summary judgment.

**I.  BACKGROUND**

This suit arises out of contracts between Plaintiffs, Shell Trademark Management BV and Motiva Enterprises, LLC, (collectively "Motiva") and Defendants, Ray Thomas Petroleum Company, Inc. ("RTP") and L. Ray Thomas ("Thomas"). These contracts all relate to the buying and selling of petroleum between Motiva and RTP. Motiva is a joint venture between Shell Oil Company and Saudi Refining Inc., engaged primarily in refining and marketing petroleum products under the "Shell" brand. Motiva, through Shell, is the owner of numerous trademarks, including SHELL and SHELL PECTEN DESIGN. RTP, a gasoline wholesaler and retailer, is a corporation

organized under the laws of North Carolina which supplies gasoline to several gas stations in North Carolina and South Carolina and also owns and operates gas stations. Thomas is the President of RTP.

From July 1996 until September 2006, RTP was a Shell-branded wholesaler, supplying gasoline to six retail stations in North and South Carolina. Motiva and RTP were parties to a Wholesale Marketer Agreement ("WMA"), which took effect on January 1, 2004, and had a five-year term that extended through December 31, 2008. In 2004, Motiva and RTP entered into a Settlement Agreement, under which RTP paid Motiva for its right to sue RTP and agreed that (1) it would not commingle Shell-brand gasoline with any other fuel and (2) it would institute and enforce an internal oversight program to ensure that Shell-branded motor fuel would not be commingled with any other motor fuel at any of RTP's outlets. In 2006, Motiva was informed that RTP was selling non-Shell gasoline at four of its six stations. On September 26, 2006, Motiva notified RTP that it was terminating the parties' franchise relationship, the WMA, and the Jobber Incentive Agreements, effective October 31, 2006.

On June 15, 2009, the Court issued an Order granting Motiva's motion for summary judgment with regard to its claims against RTP under the Lanham Act, the North Carolina Unfair and Deceptive Trade Practices Act, and the South Carolina Unfair and Deceptive Trade Practices Act, and for breach of the parties' WMA, 2004 Settlement Agreement and Jobber Incentive Agreements. Motiva now moves for summary judgment with regard to damages asserting: (1) that it is entitled to an award of Defendants' profits, attorneys fees and costs based on RTP's violations of the Lanham Act; (2) that it is entitled to an award of lost future profits based on RTP's breach of the WMA; (3) that it is entitled to lost profits, investigation fees, attorneys' fees based on RTP's

breach of the 2004 Settlement Agreement; and (4) that it is entitled to damages for breach of the North Carolina and South Carolina Unfair and Deceptive Trade Practices Acts.

**II.   SUMMARY JUDGMENT STANDARD**

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. However, "a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Id. at 252.

"'Where the Record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, No. 07-1428, 2009 U.S. LEXIS 4945, at *48, 557 U.S. ___ (2009) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

III.  DISCUSSION

  A.  DAMAGES UNDER THE LANHAM ACT

Under the Lanham Act, a plaintiff is entitled to recover, subject to the principles of equity, the defendant's profits resulting from a violation of Section 32(1) and 43(a) of the Lanham Act. 15 U.S.C. § 1117(a). The statute provides that "[t]he court shall assess such profits and damages." Id. In proving damages under the Lanham Act, "the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." Id. Thus, the court considers the defendant's sales to be profit unless a defendant can prove "all elements of cost or deduction claimed." Id.

In the Fourth Circuit, the following equitable factors are appropriate for a district court to consider when assessing a disgorgement of a defendant's profits under the Lanham Act: (1) whether the defendant had the intent to confuse or deceive, (2) whether sales were diverted, (3) the adequacy of other remedies, (4) any unreasonable delay by the plaintiff in asserting his rights, (5) the public interest in making the misconduct unprofitable, and (6) whether it is a case of "palming off." See Synergistic Int'l, LLC v. Korman, 470 F.3d 162, 174-75 (4th Cir. 2006) (noting the equitable factors used by the Third and Fifth Circuits in determining damages awards under the Lanham Act). All six of the Synergistic factors favor a disgorgement of RTP's profits.

In this case, RTP knowingly commingled and misbranded Shell gasoline with the intent of

causing its customers to believe they were purchasing Shell gasoline when they were not. RTP intentionally diverted sales of Shell gasoline. Injunctive relief is insufficient to compensate Motiva for the profits it lost on RTP's sales of non-Shell gasoline. Motiva did not delay in asserting its rights, as it promptly terminated the contract and filed suit to vindicate its rights. The public interest is served by making this willful misconduct unprofitable. Finally, RTP palmed off goods when it sold non-Shell gasoline under Shell's brand when the gasoline was not purchased from Motiva. Thus, the equities lie in favor of disgorgement of profits from RTP.

Motiva has the burden of proving "a reasonable estimate" of RTP's sales of the non-Shell gasoline. Hospitality Int'l, Inc. v. Mahtani, No. 2:97cv87, 1998 U.S. Dist. LEXIS 16445, at *26 (M.D.N.C. Aug. 3, 1998);15 U.S.C. § 1117(a). Motiva asserts that RTP's records establish that RTP sold 1,699,608 gallons of non-Shell gasoline in 2006, with gross profits to RTP of $165,321, and 771,162 gallons of non-Shell gasoline in 2005, with gross profits of $103,423. (Doc. No. 94-2 at 3). Accordingly, Motiva calculates that RTP's profits from its 2005 and 2006 sales amount to $268,744. RTP does not object to this calculation of gross profits, but instead argues that the Court should use net profits to determine the damages amount.

After the plaintiff has satisfied its burden of proving defendant's gross sales, the burden of proof shifts to the defendant "to prove all elements of costs or deductions claimed." 15 U.S.C. § 1117(a). "First, the defendant must prove that the type of cost or deduction is allowed to be deducted from the defendant's sales under the Lanham Act. Second, the defendant must prove the amount of the allowable costs or deductions." Hospitality Int'l, 1998 U.S. Dist. LEXIS 16445, at *26 (citing Maltina Corp. v. Cawy Bottling Co., 613 F.2d 582, 586-87 (2d Cir. 1980); 15 U.S.C. § 1117(a)). "Courts have repeatedly disallowed the deduction of costs which the defendant is unable to prove

5

to be directly attributable to the sale of the infringing goods or services." Id. at *27.

RTP seeks to deduct overhead expenses from the gross profit amounts. RTP's calculation of net profits (gross profits minus the overhead expenses) amounts to a negative figure for both 2005 and 2006. Jack Woerner, RTP's designated financial representative who estimated the gross and net profits from 2005 and 2006, calculated the allocation of overhead and operating costs by using a sales ratio approach. He determined the volume of Shell and non-Shell gasoline sold by the six Shell-branded stations. He estimated the sales revenues based upon the ratio of the respective volume of Shell and non-Shell sold at the stations. He then used the same ratios to estimate the cost of sales of Shell and non-Shell gasoline. He determined the difference between the sales revenue and the cost of goods to calculate the gross profit for each station. He also used the ratios to determine the allocation of overhead and operating costs attributable to the sales of non-Shell gasoline (net profit). According to Woerner, the total net profit was a loss of $15,356 for 2005 and a loss of $83,257 for 2006.

Shell objects to RTP's use of the sales ratio to determine RTP's overhead costs. Shell asserts that RTP has not met its burden of establishing with some specificity the expenses that are directly linked to profits. Woerner testified at his deposition that he was unable to identify any expenses or costs attributable solely to sales of non-Shell gasoline. He also stated that RTP's records provided no basis to identify such costs. RTP's accounting department does not separate the costs of selling gasoline from the costs associated with selling merchandise or other convenience store functions. RTP would have been responsible for these fixed costs regardless of its infringing activity. RTP, therefore, has failed to prove that these fixed overhead expenses are allowable deductions.

"An award of infringer's profits is aimed in part at deterring infringements and in part at

6

appropriately compensating the [trademark] holder. These goals . . . can best be achieved by allowing a deduction for overhead only when the infringer can demonstrate it was of actual assistance in the production, distribution or sale of the infringing product." Kamar Int'l, Inc. v. Russ Berrie & Co., Inc., 752 F.2d 1326, 1332 (9th Cir. 1984) (internal citation omitted). Thus, given these goals and the willful nature of RTP's infringement, this Court concludes that it would be inequitable to deduct overhead expenses from the gross profits without a clearer showing of costs associated with the sale of the non-Shell gasoline. Additionally, it would be difficult for the Court to understand why RTP would deliberately commingle if there were no profit involved.

RTP needed to provide proof that its overhead costs were incurred in connection with the sale of non-Shell gasoline. This is particularly necessary here where most of RTP's costs were fixed costs that RTP would have incurred regardless of its infringing sales.[1] The Court finds that there is no genuine dispute of material fact and grants summary judgment to Motiva. The Court finds that Motiva is entitled to be awarded the full amount of RTP's gross profits from the sales of non-Shell gasoline in the amount of $268,744.[2]

1.   Treble damages

Under the Lanham Act, a district court has discretion to "enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount." 15 U.S.C. § 1117(a). However, the statute requires that "[s]uch sum . .

---

[1] See Hamil Am., Inc. v. GFI, Inc., 193 F.3d 92, 106-07 (2d Cir. 1999) ("[W]illful infringers should not be permitted to subsidize the sale of legitimate goods with the sale of infringing goods by passing part of [their] fixed cost on to the [trademark] holder." (internal quotation marks omitted)).

[2] "If the infringer provides no evidence from which the court can determine the amount of any cost deductions, there is no obligation to make an estimate, and 'costs' need not form any part of the calculation of profits . . . . When the [infringer's] burden is not carried, plaintiff is awarded all revenue for that year." J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition,§ 30.26[2][a] (3d ed.).

. shall constitute compensation and not a penalty." Id.

Generally, district courts have exercised their authority to treble the damages award and increase the profits award to a trebled amount in cases involving intentional, knowing, deliberate, or willful infringement. See, e.g., Deering, Milliken & Co., Inc. v. Gilbert, 269 F.2d 191, 194 (2d Cir. 1959) (trebling of profits award appropriate "in view of the deliberate and fraudulent nature of the infringement"); Polo Fashions, Inc. v. Magic Trimmings, Inc., 603 F. Supp. 13, 20 (S.D. Fla. 1984) ("Justice requires that the amount of Defendants' profits awarded to the Plaintiff as damages be trebled" based on finding of willful infringement); Polo Fashions Inc. v. Gentlemen's Corner Wholesale, Inc., No. 81-2431-14, 1983 U.S. Dist. LEXIS 17816, at *3-4 (D.S.C. 1983) (trebling of actual damages award based on finding of intentional and willful infringement). As one court wrote, "[t]rebling of damages in cases of willful and intentional infringement is designed to provide an economic deterrence to those who contemplate the otherwise lucrative profession of trademark piracy." Gentlemen's Corner Wholesale, 1983 U.S. Dist. LEXIS 17816, at *2-3.

In light of RTP's continuing history of commingling and the wilfulness of its acts, the Court finds that trebling the damages is warranted. The Court hereby trebles the damages and awards Motiva damages of $806,232.

        2.        Attorneys fees, Costs and Prejudgment interest

In "exceptional cases" involving trademark infringement, reasonable attorneys' fees may be recovered by the prevailing party. 15 U.S.C. § 1117. "Under 15 U.S.C. § 1117(a), a case is 'exceptional' if the defendant's conduct was malicious, fraudulent, willful or deliberate in nature." People for the Ethical Treatment of Animals v. Doughney, 263 F.3d 359, 370 (4th Cir. 2001) (internal quotations omitted). Because the evidence presented by Motiva establishes that RTP

committed an intentional and willful infringement of Motiva's registered trademark, this Court concludes that this case is an "exceptional case" under 15 U.S.C. § 1117 and that Motiva is therefore entitled to recover from RTP reasonable attorneys' fees.

The Court will determine the amount of reasonable attorneys' fees, costs, and prejudgment interest, if any, at a later date.

B.   AWARD OF LOST FUTURE PROFITS

The Court previously determined that RTP breached the WMA. The WMA obligated RTP to purchase specified quantities of gasoline each calendar year through December 31, 2008 (4.0 million gallons in 2006, 4.2 million gallons in 2007, and 4.4 million gallons in 2008). Motiva's damages for breach of the WMA consist of the lost future profits Motiva would have earned during the remaining 26 months of the WMA.

Ordinarily, a seller's damages for a buyer's breach of contract are measured by the difference between the contract price and the market price. See N.C. Gen. Stat. § 25-2-708(1). In some situations, however, where the broken contract costs a lost volume seller, this sum is inadequate to place the seller in as good a position as performance would have done. To be made whole, a lost volume seller must thus recover damages equal to the profit it lost on the sale. See N.C. Gen. Stat. § 25-2-708(2).

Motiva bears the burden to demonstrate that it is a lost volume seller. "A lost volume seller is one who has the capacity to perform the contract which was breached as well as other potential contracts, due to their unlimited resources or production capacity." Bill's Coal Co. v. Bd. of Pub. Utils., 887 F.2d 242, 245 (10th Cir. 1989). Motiva has provided evidence in the form of affidavits and deposition testimony to prove that it had the production capacity to perform RTP's contract as

9

well as to sell to other potential purchasers.

Motiva uses a demand forecast program to determine the amount of product sent to the terminals. This program adjusts the supply amounts depending on the demand forecasts for each terminal. In addition to the demand forecast program, Motiva employs lifting allocations which restrict the amount of gasoline any one customer can lift from a terminal. RTP argues that these lifting allocations mean that Motiva does not have excess gasoline at the terminals and thus cannot be a lost volume seller. Whether Motiva is a lost volume seller is a question for the jury. See id. (holding that whether a seller is a lost volume seller "is a decision dictated by the underlying facts and thus ultimately a question of fact"). Since there is a dispute over the effect of the lifting allocations and Motiva's ability to produce an unlimited supply, there is a genuine issue of material fact that is in dispute. The Court concludes that summary judgment is not appropriate.

If Motiva fails in its burden to establish it is a lost volume seller, it can recover damages less any failure to mitigate damages. "It is an established principle that when there has been a breach of contract definite and entire, the injured party must do what fair and reasonable business prudence requires to save himself and reduce the damage, or the damage which arises from his own neglect will be considered too remote for recovery." Tillinghast v. Cotton Mills, 55 S.E. 621, 623 (N.C. 1906). Whether Motiva exercised reasonable steps to mitigate its damages as a non-lost volume seller is a question of fact for the jury.

    C.    LOST PROFITS, INVESTIGATION FEES AND ATTORNEY'S FEES DUE TO RTP'S BREACH OF THE SETTLEMENT AGREEMENT

In its previous Order, this Court found that RTP had breached the 2004 Settlement Agreement by deliberately commingling and misbranding gasoline. The Settlement Agreement

provided that Motiva would be entitled to recover damages, its investigation costs, reasonable attorneys' fees and remedies under § 1117 of the Lanham Act if Motiva establishes that RTP commingled. Motiva does not seek duplicative recovery of the amounts to which it is entitled under the Lanham Act. The Court will award Motiva the investigative costs it incurred in connection with the testing and discovery of the 2006 commingling after Motiva provides a full accounting of such costs.

    D.    DAMAGES FOR BREACH OF THE NORTH CAROLINA AND SOUTH CAROLINA UNFAIR AND DECEPTIVE TRADE PRACTICES ACTS

In its previous Order, this Court determined that RTP's willful commingling violated the North Carolina and South Carolina Unfair and Deceptive Trade Practices Acts ("UDTPA"). N.C. Gen. Stat. § 75-16; S.C. Code Ann. § 39-5-140. Under the NC UDPTA, Motiva is entitled to recover RTP's profits from the sale of non-Shell gasoline. The statute provides that damages assessed for unfair trade practices "shall be rendered in favor of the plaintiff and against the defendant for treble the amount fixed by the verdict." N.C. Gen. Stat. § 75-16. Thus, the Court has no discretion and will award Motiva treble damages.

Under the SC UDTPA, treble damages are recoverable where "the use or employment of the unfair or deceptive . . . act or practice was a willful or knowing violation of § 39-5-20." S.C. Code Ann. § 39-5-140. The statute also requires the court to award reasonable attorneys' fees and costs. Id. RTP's act of commingling and misbranding Shell gasoline was willful and knowing. Thus, this Court will treble the damages and award reasonable attorneys' fees and costs to be determined at a later date.

IV. CONCLUSION

The Court **GRANTS in part** and **DENIES in part** the Plaintiffs' Motion for Partial Summary Judgment. Motiva is entitled to damages in the following amounts:

| Cause of Action | Damages |
|---|---|
| (1) Violation of Lanham Act | |
|     (a) RTP's profits from sale of commingled gasoline | $268, 744 (actual)<br>$806,232 (trebled) |
|     (b) Attorneys' fees, costs and pre-judgment interest | To be determined |
| (2) Lost Future Profits under the WMA | To be determined by the jury |
| (3) Breach of Settlement Agreement | |
|     (a) RTP's profits from sale of commingled gasoline | $268,744* |
|     (b) Investigation costs | To be determined |
|     (c) Attorneys' fees | To be determined* |
| (4) Violation of NC and SC UDTPAs | |
|     (a) RTP's profits from sale of commingled gasoline | $268, 744 (actual)*<br>$806,232 (trebled)* |
|     (b) Attorneys' fees | To be determined* |

\* Duplicate Amounts will only be awarded to Motiva once.

**IT IS SO ORDERED.**

Signed: July 13, 2009

Robert J. Conrad, Jr.
Chief United States District Judge